**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LORETTA LAX MILLER,** | : | **CIVIL NO. 1:15-CV-34** |
| | : | |
| **Plaintiff,** | : | **(Judge Kane)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **ATA RICHARD ZANDIEH, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**REPORT AND RECOMMENDATION**

**I.    Statement of Facts and of the Case**

This is a *pro se* civil action that was first brought by Loretta Lax Miller, through

the filing of a complaint on January 6, 2015.  (Doc. 1.)  Miller's initial *pro se*

complaint is a lengthy, but confusing, document, which stitches together disparate

parties, claims and causes of action.  At the outset, Miller named a private party and

Pennsylvania resident, Ata Richard Zandieh, as a defendant in this lawsuit.  Miller

apparently had a lengthy, but poorly explained, history with Zandieh, a history that

included some state civil litigation in the Court of Common Pleas of Dauphin County.

In her complaint, Miller alleged in a summary fashion that Zandieh had committed

bankruptcy fraud in Philadelphia and has operated Ponzi schemes in the past, but

provided few well-pleaded factual averments in support of these claims.  Miller also

asserted, without supporting factual details, that Zandieh is in some way responsible for injuries she suffered when she stumbled and fell into a sinkhole outside her home in November 2014.  (Id.)

Miller's complaint then contained a separate narrative thread relating to the Dauphin County Tax Bureau and an official of that agency.  Much of this narrative appeared to relate to a 2012 tax assessment, and Miller's assertion that in 2012 she discovered evidence of anti-Semitism by a tax official.  (Id.)  While it was unclear from Miller's original complaint, it also appeared that these tax assessments matters have been the subject of unsuccessful litigation by Miller in the Court of Common Pleas of Dauphin County.  (Id.)

These various state lawsuits that Miller vaguely alluded to in her pleadings, in turn, introduced the third narrative thread to this complaint.  In this portion of her narrative, Miller sued a state court judge, and the attorney who represented the tax bureau in this state litigation, alleging that the judge should have recused himself from this otherwise undescribed litigation due to his friendship and association with counsel.  (Id.)  On the basis of these allegations, Miller sought more than $40,000,000 in damages along with wide-ranging injunctive relief including orders freezing assets and–apparently–the criminal prosecution of a number of these civil defendants.  (Id.)

Along with her complaint, the plaintiff filed a motion to proceed *in forma pauperis*. (Doc. 2.) On January 12, 2015, we granted Miller leave to proceed *in forma pauperis* but as part of our legally-mandated duty to screen *pro se in forma pauperis* pleadings, we recommended that this complaint be dismissed. (Doc. 5.)

Miller responded to this Report and Recommendation by filing what the district court has construed as an amended complaint. (Doc. 7.) This document, while described as a "Clarification of the Complaint," in fact adds not legal clarity to this pleading. Instead, it alleges in a prolix and confusing fashion that a vast array of defendants have committed a breath-taking variety of federal crimes and apparently seeks to pursue these criminal allegations in the guise of a federal civil lawsuit. (Doc. 7.)

Given this filing, the district court referred this case to us for a further screening review. (Doc. 8.) Having conducted this second screening review of these pleadings, for the reasons set forth below, we recommend that the complaint, (Doc. 1.), and amended complaint, (Doc. 7.), be dismissed.

## II.   **Discussion**

### A.   **Screening of *Pro Se In Forma Pauperis* Complaints–Standard of Review**

This Court has an on-going statutory obligation to conduct a preliminary review of complaints filed by plaintiffs who seek leave to proceed *in forma pauperis,* and

seek redress against government officials.  See 28 U.S.C. §§1915 and 1915A.

Specifically, we  must assess whether a *pro se, in forma pauperis* complaint "fails to

state a claim upon which relief may be granted."  This statutory text, in turn, mirrors

the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides

that a complaint should be dismissed for "failure to state a claim upon which relief can

be granted."  Fed. R. Civ. P. Rule 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the

United States Court of Appeals for the Third Circuit has aptly noted the evolving

standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in
> recent years.  Beginning with the Supreme Court's opinion in <u>Bell
> Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) continuing with our
> opinion in <u>Phillips</u> [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir.
> 2008)] and culminating recently with the Supreme Court's decision in
> <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have
> seemingly shifted from simple notice pleading to a more heightened form
> of pleading, requiring a plaintiff to plead more than the possibility of
> relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may

be granted, the court must accept as true all allegations in the complaint and all

reasonable inferences that can be drawn therefrom are to be construed in the light most

favorable to the plaintiff.  <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d

1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald

assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth.  While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations.  When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state
> a claim, district courts should conduct a two-part analysis.  First, the
> factual and legal elements of a claim should be separated.  The District
> Court must accept all of the complaint's well-pleaded facts as true, but
> may disregard any legal conclusions.  Second, a District Court must then
> determine whether the facts alleged in the complaint are sufficient to
> show that the plaintiff has a 'plausible claim for relief.'  In other words,
> a complaint must do more than allege the plaintiff's entitlement to relief.
> A complaint has to 'show' such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has also observed:  "The Supreme Court in Twombly set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal.  The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' Twombly, 550 U.S. at 570,

127 S.Ct. 1955.  A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955).  This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' Id.  A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:  "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947.  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950.  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id."  Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

(a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

In our view, these pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this analysis both when assessing the adequacy of the factual assertions set forth in this complaint.

### B.   Miller's Amended Complaint Still Fails to State a Claim Upon Which Relief May be Granted

Judged by these legal guideposts, Miller's complaint and amended complaint both still fail to state a claim upon which relief may be granted for several independent reasons.

### 1.   Miller Has Not Stated a Claim Against Defendant Zandieh Upon Which Relief May Be Granted in Federal Court

First, it appears that this amended complaint continues to fail to state a claim against defendant Zandieh, a private party who resides in Pennsylvania, which falls within the original jurisdiction of this Court. It is well-settled that federal courts are courts of limited jurisdiction. As a general rule, there are two primary grounds for federal district court jurisdiction over a civil lawsuit. First, "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between–(1) citizens

of different States." 28 U.S.C. § 1332(a)(1).  This ground of federal jurisdiction is known as diversity jurisdiction.   The second principal ground for invoking the jurisdiction of a federal court is known as federal question jurisdiction.  Under this ground of jurisdiction, "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. §1331.

Given the well-pleaded allegations in her complaint and amended complaint, in this case both Miller and Zandieh appear to be residents of Pennsylvania. Therefore, diversity jurisdiction does not lie here.  Nor can Miller claim some sort of federal question jurisdiction in this case since the complaint in its current form fails to state a claim under the Constitution and laws of the United States.  At bottom, Miller seeks to bring an array of grievances against a private person who resides in Pennsylvania.   Such complaints simply do not rise to the level of a cognizable violation of the United States Constitution which could  be pursued civilly in federal court.   Indeed, any such civil rights claim runs afoul of single, simple, and insurmountable obstacle.   The principal statutory vehicle for bringing federal constitutional civil rights claims is 42 U.S.C. §1983.  It is well-established that § 1983 does not by its own force create new and independent legal rights to damages in civil rights actions.  Rather, § 1983 simply serves as a vehicle for private parties to bring civil actions to vindicate violations of separate, and pre-existing, legal rights otherwise

guaranteed under the Constitution and laws of the United States.  Albright v. Oliver, 510 U.S. 266, 271 (1994); Graham v. Connor, 490 U.S. 386, 393-94 (1989). Therefore, any analysis of the legal sufficiency of a cause of action under § 1983 must begin with an assessment of the validity of the underlying constitutional and statutory claims advanced by the plaintiff.

In this regard, it is also well-settled that:

Section 1983 provides a remedy for deprivations of federally protected rights caused by persons acting under color of state law.  The two essential elements of a § 1983 action are:  *(1) whether the conduct complained of was committed by a person acting under color of state law*; and (2) whether this conduct deprived a person of a federally protected right.  Parratt v. Taylor, 451 U.S. 527, 535 (1981).

Boykin v. Bloomsburg University of Pennsylvania, 893 F.Supp. 409, 416 (M.D.Pa. 1995), aff'd, 91 F3d 122 (3d Cir. 1996)(emphasis added).  Thus, it is essential to any civil rights claim brought under § 1983 that the plaintiff allege and prove that the defendant was acting under color of law when that defendant allegedly violated the plaintiff's rights.  To the extent that a complaint seeks to hold private parties liable for alleged civil rights violations, it fails to state a valid cause of action under 42 U.S.C. § 1983 since the statute typically requires a showing that the defendants are state actors.  Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

Likewise, while this complaint refers vaguely to bankruptcy fraud and other alleged frauds by Zandieh, Miller has failed to state a fraud claim upon which relief

may be granted.  With respect to civil claims involving allegations of fraud, the level of pleading specificity required in a complaint is clear.  As the United States Court of Appeals for the Third Circuit has observed:

> Where, . . ., plaintiffs rely on . .  fraud as a basis for a . . . violation, the allegations of fraud must comply with Federal Rule of Civil Procedure 9(b), which requires that allegations of fraud be pled with specificity.  In order to satisfy Rule 9(b), plaintiffs must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.".  Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  *Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation*.

Lum v. Bank of America, 361 F.3d 217, 223-4 (3d Cir. 2004)(citations omitted, emphasis added).

Thus, "[p]ursuant to Rule 9(b), a plaintiff averring a claim in fraud must specify ' "the who, what, when, where, and how: the first paragraph of any newspaper story."' Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir.1999) (quoting DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir.1990)).  'Although Rule 9(b) falls short of requiring every material detail of the fraud such as date, location, and time, plaintiffs must use "alternative means of injecting precision and some measure of substantiation into their allegations of fraud."'  In re Rockefeller Ctr. Props. Secs. Litig., 311 F.3d 198, 216 (3d Cir.2002) (quoting In re Nice Sys., Ltd. Secs. Litig., 135 F.Supp.2d 551,

577 (D.N.J.2001), emphasis supplied)." <u>Animal Science Products, Inc. v. China Nat.</u>

<u>Metals & Minerals Import & Export Corp.</u>, 596 F.Supp.2d 842, 878 (D.N.J.,2008).

In this case, Miller's amended complaint still simply does not meet the pleading

standards required under Rule 9.   Further, to the extent that this *pro se* amended

complaint's references to various federal criminal statutes can be construed as inviting

us to commence a criminal case as part of this civil lawsuit, this we may not do.  It is

well established that decisions regarding the filing of criminal charges are the

prerogative of the executive branch of government, are consigned to the sound

discretion of prosecutors, and under the separation of powers doctrine are not subject

to judicial fiat.  Indeed, it has long been recognized that the exercise of prosecutorial

discretion is a matter, "particularly ill-suited to judicial review." <u>Wayte v. United</u>

<u>States</u>, 470 U.S. 598, 607, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985).  Recognizing this

fact, courts have long held that a civil litigant may not seek relief in civil litigation in

the form of an order directing the criminal prosecution of some third parties, finding

that civil plaintiffs lack standing to make such claims and concluding that such relief

simply is unavailable in a civil lawsuit.  <u>See, e.g.</u>, <u>Ostrowski v. Mehltretter</u>, 20 Fed.

Appx. 87, 90 (2d Cir.2001) (stating that "Ostrowski has no standing to sue for any of

Mehltretter's actions.  First of all, he has not shown, injury-in-fact.  The failure of

Mehltretter to investigate or prosecute Bybel did not injure him in any direct manner-

he has no 'personal stake in the outcome' of a perjury case brought against (or not

brought against) another person ."); See also Kim v. Romero, 877 F.2d 64, 1989 WL

67116 at *1 (9th Cir. June 14, 1989) (affirming the dismissal of a suit against various

prosecuting authorities for their failure to bring charges against a sheriff for alleged

battery); McMinn v. Damiani, 765 F.2d 145, 1985 WL 13323 (6th Cir. May 3, 1985)

(affirming the dismissal for lack of standing a pro se civil rights case where plaintiff

had sued state prosecuting authorities for failing to investigate or prosecute claims

against various state judges and lawyers); Gessner v. Dep't of Corr., 3:14-CV-111,

2014 WL 972290 (M.D. Pa. Mar. 12, 2014); Snyder v. Aaron, CIV.A. 05–1602, 2006

WL 544466 (W.D.Pa. Mar.6, 2006); Mover v. Borough of North Wales, Civ. No.

00–1092, 2000 WL 1665132 at *2 (E.D.Pa.Nov.7, 2000) (stating that "Moyer has no

judicially cognizable interest in Timothy Conley's criminal prosecution.  Accordingly,

an agreement to refrain from prosecuting Conley for sexual assault or to charge him

with disorderly conduct or the act thereof violates no constitutional right that Moyer

has standing to assert."); see also Wise v. Augustine, Civ. No. 97–2651, 1997 WL

534695 at *2 (E.D.Pa. Aug.8, 1997) (stating that "[a] private citizen has no

constitutional, statutory, or common law right to require a public official to investigate

or prosecute a crime."); Dundore v. O'Donnell, Civ. No. 85–2907, 1985 WL 2681 at

*2 (E.D.Pa. Sept.17, 1985) (stating that "Defendant O'Donnell is alleged to have

refused to file the criminal charges brought by plaintiffs.  Although plaintiffs were no doubt aggrieved when O'Donnell refused to file the charges, they have no constitutional right that I am aware of to have criminal charges filed."); Corbin v. Stevens, Civ. No. 91–1054, 1992 WL 96684 at *2 (S.D.N.Y. April 30, 1992) (stating that "[p]laintiff possesses no constitutional right to have someone arrested...."). Therefore, all of the claims made by Miller in this amended complaint under federal criminal statutes simply fail as a matter of law to state a civil cause of action.

### 2.    Miller's Claims Pre-dating January 2013 Are Barred by the Statute of Limitations

Further, many of Miller's allegations, and particularly those relating to tax bureau officials appear to involve conduct which took place in 2012, more than two years prior to the filing of this complaint and amended complaint.  In this regard, when conducting a screening review of a *pro se* complaint under 28 U.S.C. § 1915, a court may consider whether the complaint is barred under the applicable statute of limitations.  As the United States Court of Appeals for the Third Circuit recently explained when it affirmed the screening dismissal of a *pro se* complaint on statute of limitations grounds:

> Civil rights claims are subject to the statute of limitations for personal injury actions of the pertinent state.  Thus, Pennsylvania's two year statutory period applies to [these] claims.  See Lake v. Arnold, 232 F.3d 360, 368 (3d Cir.2000).  The limitations period begins when the plaintiff knows or had reason to know of the injury forming the basis for the

federal civil rights action.  Gera v. Commonwealth of Pennsylvania, 256 Fed.Appx. 563, 564-65 (3d Cir.2007).  Although we have not addressed the issue in a precedential decision, other courts have held that although the statute of limitations is an affirmative defense, district court may *sua sponte* dismiss a complaint under § 1915(e) where the defense is obvious from the complaint and no development of the factual record is required.  See Fogle v. Pierson, 435 F.3d 1252, 1258 (10th Cir.2006); see also Eriline Co. S.A. v. Johnson, 440 F.3d 648, 656-57 (4th Cir.2006) (citation omitted)(finding that a district court's screening authority under § 1915(e) "differentiates in forma pauperis suits from ordinary civil suits and justifies an exception to the general rule that a statute of limitations defense should not be raised and considered sua sponte.").

Smith v. Delaware County Court 260 F. App'x. 454, 455 (3d Cir. 2008).

Applying these standards, we find that the allegations in this *pro se* complaint and amended complaint which occurred in 2012 are subject to dismissal on statute of limitations grounds.  Specifically, these claims and allegations, which took place more than two years prior to the filing of this complaint, are now time-barred by the two year statute of limitations generally applicable to civil rights matters.

It is well-settled that claims brought pursuant to 42 U.S.C. § 1983 are subject to the state statute of limitations for personal injury actions.  Wilson v. Garcia, 471 U.S. 261, 266-67 (1985).  In Pennsylvania, the statute of limitations for a personal injury action is two years.  42 Pa.C.S. § 5524.  A cause of action accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action.  Sameric Corp. of Delaware, Inc. v. City

of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998); see also, Nelson v. County of

Allegheny, 60 F.3d 1010 (3d Cir. 1995).

While this two-year limitations period may be extended based upon a continuing

wrong theory, a plaintiff must make an exacting showing to avail herself of this

grounds for tolling the statute of limitations. For example, it is well settled that the

"continuing conduct of [a] defendant will not stop the ticking of the limitations clock

[once] plaintiff obtained requisite information [to state a cause of action]. On

discovering an injury and its cause, a claimant must choose to sue or forego that

remedy." Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998) (quoting

Kichline v. Consolidated Rail Corp., 800 F. 2d 356, 360 (3d Cir. 1986)). See also

Lake v. Arnold,  232 F.3d 360, 266-68 (3d Cir. 2000). Instead:

> The continuing violations doctrine is an "equitable exception to the
> timely filing requirement." West v. Philadelphia Elec. Co., 45 F.3d 744,
> 754 (3d Cir.1995). Thus, "when a defendant's conduct is part of a
> continuing practice, an action is timely so long as the last act evidencing
> the continuing practice falls within the limitations period; in such an
> instance, the court will grant relief for the earlier related acts that would
> otherwise be time barred." Brenner v. Local 514, United Bhd. of
> Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir.1991). In
> order to benefit from the doctrine, a plaintiff must establish that the
> defendant's conduct is "more than the occurrence of isolated or sporadic
> acts." West, 45 F.3d at 755 (quotation omitted). Regarding this inquiry,
> we have recognized that courts should consider at least three factors: (1)
> subject matter-whether the violations constitute the same type of
> discrimination, tending to connect them in a continuing violation; (2)
> frequency-whether the acts are recurring or more in the nature of isolated
> incidents; and (3) degree of permanence-whether the act had a degree of

permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.  See id. at 755 n. 9 (citing Berry v. Board of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir.1983)).  The consideration of "degree of permanence" is the most important of the factors.  See Berry, 715 F.2d at 981.

Cowell v. Palmer Township. 263 F.3d 286, 292 (3d Cir. 2001)

In this case, to the extent that Miller complains about matters occurring in 2012 she plainly and immediately attached a high degree of significance and permanence to the events set forth in this complaint.  Thus, Miller recites facts in this complaint which clearly reveal that, to the extent these events entailed violations of the plaintiff's constitutional rights, those violations were known and recognized by Miller when they first occurred, more than two years ago.  Thus, these alleged events plainly had the degree of significance and permanence which should have triggered the plaintiff's awareness of his duty to assert her rights.  Therefore, in this case a straightforward application of the two-year statute of limitations compels dismissal of the claims pre-dating January 2013 made by the plaintiff in this action as untimely.

## 3. The Rooker-Feldman Doctrine Also Bars Consideration of This Case

Moreover, at this juncture, where Miller has filed a civil action which apparently invites this Court to set aside findings made by state courts in the course of an array of state litigation instigated by the plaintiff, the plaintiff also necessarily

-17-

urges us to sit as a state appellate court and review, re-examine and reject these state court rulings in these state cases.  This we cannot do.  Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the Rooker-Feldman doctrine, which compels federal district courts to decline invitations to conduct what amounts to appellate review of state trial court decisions.  As described by the Third Circuit:

> That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine.  Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).  The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court....".  See also Desi's Pizza, Inc. v. City of Wilkes Barre, 321 F.3d 411, 419 (3d Cir.2003).  "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions."  Desi's Pizza, 321 F.3d at 419.

Gary v. Braddock Cemetery, 517 F.3d 195, 200 (3d Cir. 2008).

Because federal district courts are not empowered by law to sit as reviewing courts, reexamining state court decisions, "[t]he Rooker-Feldman doctrine deprives a federal district court of jurisdiction in some circumstances to review a state court adjudication."  Turner v. Crawford Square Apartments III, LLP,, 449 F.3d 542, 547 (3d Cir. 2006).  Cases construing this jurisdictional limit on the power of federal courts have quite appropriately:

[E]mphasized the narrow scope of the Rooker-Feldman doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name:  cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  [Exxon Mobil Corp. v. Saudi Basic Industries Corp.], 544 U.S. at 284, 125 S.Ct. at 1521-22; see also Lance v. Dennis, 546 U.S. 459, ----, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006)

Id.

However, even within these narrowly drawn confines, it has been consistently recognized that the Rooker-Feldman doctrine prevents federal judges from considering lawsuits "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  This principle applies here and compels dismissal of this case, to the extent that Miller improperly invites us to act as a Pennsylvania appellate court for matters and claims relating to a state litigation arising out of the plaintiff's state lawsuits.

### 4.      This Court Should Abstain From Ruling Upon Claims for Injunctive Relief in This State Case

Further, this complaint and amended complaint also seemingly invites us to issue wide-ranging injunctions in a number of state cases.  To the extent that the complaint invites this Court to enjoin aspects of state cases, and in effect calls upon us to dictate the result of these pending state cases, these *pro se* pleadings run afoul of a settled tenet of federal law, the Younger abstention doctrine.

-19-

The <u>Younger</u> abstention doctrine is inspired by basic considerations of comity that are fundamental to our federal system of government.  As defined by the courts: "<u>Younger</u> abstention is a legal doctrine granting federal courts discretion to abstain from exercising jurisdiction over a claim when resolution of that claim would interfere with an ongoing state proceeding.  <u>See</u> <u>Younger v. Harris</u>, 401 U.S. 37, 41 (1971) ('[W]e have concluded that the judgment of the District Court, enjoining appellant Younger from prosecuting under these California statutes, must be reversed as a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances.')."  <u>Kendall v. Russell</u>, 572 F.3d 126, 130 (3d Cir. 2009).

This doctrine, which is informed by principles of comity, is also guided by these same principles in its application.  As the United States Court of Appeals for the Third Circuit has observed:

> "A federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding." <u>Addiction Specialists, Inc. v. Twp. of Hampton</u>, 411 F.3d 399, 408 (3d Cir.2005) (citing <u>Younger v. Harris</u>, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)).  As noted earlier, the <u>Younger</u> doctrine allows a district court to abstain, but that discretion can properly be exercised only when (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. <u>Matusow v. Trans-County Title</u>

Agency, LLC, 545 F.3d 241, 248 (3d Cir.2008).

Kendall v. Russell, 572 F.3d at 131.

Once these three legal requirements for Younger abstention are met, the decision to abstain rests in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319, 325 (3d Cir. 2004). Moreover, applying these standards, federal courts frequently abstain from hearing matters which necessarily interfere with on-going state cases. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319 (3d Cir. 2004); Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002).

In this case, the plaintiff's *pro se* complaint and amended complaint reveal that all of the legal prerequisites for Younger abstention are present here with respect to those claims that seek to enjoin on-going state cases. First, it is evident that there are state proceedings in this case. Second, it is also apparent that those proceedings afford Miller a full and fair opportunity to litigate the issues raised in this lawsuit in her state cases. See Sullivan v. Linebaugh, 362 F. App'x 248, 249-50 (3d Cir. 2010). Finally, it is clear that the state proceedings implicate important state interests, and matters of paramount importance to the state. See, e.g.. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319 (3d Cir. 2004); Zahl v. Harper, 282 F.3d

204 (3d Cir. 2002).  Since the legal requirements for <u>Younger</u> abstention are fully met here, the decision to abstain rests in the sound discretion of this court.  <u>Lui v. Commission on Adult Entertainment Establishments</u>, 369 F.3d 319, 325 (3d Cir. 2004).  However, given the important state interest in enforcement of its criminal laws, and recognizing that the state courts are prepared to fully address the merits of these matters, we believe that the proper exercise of this discretion weighs in favor of abstention and dismissal of this federal case at the present time.  <u>Lui v. Commission on Adult Entertainment Establishments</u>, 369 F.3d 319 (3d Cir. 2004);  <u>Zahl v. Harper</u>, 282 F.3d 204 (3d Cir. 2002).

### 5.    <u>The Judge  Named in this Lawsuit Is Entitled to Immunity</u>

Further, Miller's *pro se* complaint and amended complaint still fail to state a claim against the  state judge named as a defendant in this action.  Liberally construed, this *pro se* complaint and amended complaint seek to hold this judge personally liable for alleged civil rights violations arising out of the performance of judicial acts in Miller's prior lawsuits.  To the extent that the plaintiff seeks in this complaint to hold any judge personally liable for civil rights violations, based upon an alleged failure to act favorably in ruling upon prior lawsuits, it is well-settled that such officials are individually cloaked with immunity from liability.  The United States Supreme Court has long recognized that those officials performing judicial, quasi-judicial, and

prosecutorial functions in our adversarial system must be entitled to some measure of protection from personal liability for acts taken in their official capacities. In order to provide this degree of protection from liability for judicial officials, the courts have held that judges, Mireless v. Waco, 502 U.S. 9, 13 (1991); prosecutors, Imbler v. Pachtman, 424 U.S. 409, 427 (1976); and those who perform adjudicative functions, Imbler, 424 U.S. at 423 n. 20 (grand jurors); Harper v. Jeffries, 808 F.2d 281, 284 (3d. Cir. 1986)(parole board adjudicators); are entitled to immunity from personal liability for actions they take in our adversarial system of justice.

These longstanding common law immunities apply here and prevent Miller from maintaining this civil action against any judge named in this complaint since the judge is entitled to judicial immunity for actions in these state proceedings and is absolutely immune from personal liability for any judicial acts. See, e.g., Arsad v. Means, 365 F.App'x 327 (3d Cir. 2010); Figueroa v. Blackburn, 208 F.3d 435 (3d Cir. 2000). As we have explained when rejecting a similar efforts to impose personal civil rights liability on a judge, this immunity is both broad and absolute:

> "It is a well-settled principle of law that judges are generally 'immune from a suit for money damages.' " Figueroa v. Blackburn, 208 F.3d 435, 440 (3d Cir.2000) (quoting Mireles v. Waco, 502 U.S. 9, 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam), and citing Randall v. Brigham, 74 U.S. (7 Wall.) 523, 536, 19 L.Ed. 285 (1868)). "The doctrine of judicial immunity is founded upon the premise that a judge, in performing his or her judicial duties, should be free to act upon his or her

convictions without threat of suit for damages." Id. (citations omitted). Therefore, "[a] judge is absolutely immune from liability for his [or her] judicial acts even if his [or her] exercise of authority is flawed by the commission of grave procedural errors," Stump v. Sparkman, 435 U.S. 349, 359, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), and "[j]udicial immunity cannot be overcome by allegations of bad faith or malice" Goldhaber v. Higgins, 576 F.Supp.2d 694, 703 (W.D.Pa.2007). Such immunity can be overcome only where a judge's acts are nonjudicial in nature, or where such actions, while judicial in nature, are "taken in the complete absence of all jurisdiction." Mireles, 502 U.S. at 12.

Catanzaro v. Collins, CIV. A. 09-922, 2010 WL 1754765 (M.D. Pa. Apr. 27, 2010), aff'd, 447 F. App'x 397 (3d Cir. 2011); Kwasnik v. Leblon, 228 F. App'x 238, 243 (3d Cir. 2007) ("A judicial officer in the performance of his or her duties has absolute immunity from suit. Mireles v. Waco, 502 U.S. 9, 12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.' " Stump v. Sparkman, 435 U.S. 349, 356-57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) ). Therefore, Miller's claims against this judge also fail.

## 6.   Miller Cannot Sue a Private Attorney for Representing a Local Government Agency

Likewise, Miller's claims against the private attorney who is alleged to have represented the tax bureau in state court fails because private counsel retained by local government agency to assist those agencies in legal matters are often entitled to

qualified immunity. <u>Filarsky v. Delia</u>, –U.S.– ,132 S. Ct. 1657, 1667 (2012). Given Miller's failure to plead any viable civil rights claims against any other defendants arising out of the conduct of this state court civil litigation, we conclude that counsel for the tax bureau should also be immune from civil liability for the simple act of representing a county agency in a civil lawsuit.

### C.    The Deficient Claims in This Amended Complaint Should Be Dismissed With Prejudice

Having conducted this second screening analysis and determined that this amended complaint is still wanting, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, <u>see</u> <u>Fletcher-Hardee Corp. v. Pote  Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). In this case the Court has previously provided the plaintiff with an opportunity to amend these pleadings, but to no avail. The current amended complaint still fails to state a viable civil rights cause of action against these defendants, and actually repeats assertions that were previously found to be legally insufficient. Since the plaintiff has been afforded an opportunity to correct the deficiencies identified in this prior complaint with respect to these defendants, has failed to state a viable civil rights cause of action, and the factual and legal grounds proffered in support of the amended

complaint make it clear that the plaintiff has no right to relief, granting further leave to amend would be futile or result in undue delay.  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).   Therefore, it is recommended that the amended complaint be dismissed without further leave to amend.

## III.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's amended complaint (Doc. 7.), should be dismissed with prejudice.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 11th day of February, 2015.

_**S/Martin C.  Carlson**_

Martin C. Carlson
United States Magistrate Judge